[No. 11681. Department One. August 25, 1914.]

WILLIAM W. SEYMOUR, *Appellant*, v. THE CITY OF
ELLENSBURG *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—INDEBTEDNESS—LIMITATION — ASSETS—
UNPAID TAXES. There being a presumption of payment of delinquent
taxes arising from lapse of time, applying alike to real as well as
personal taxes, real taxes delinquent for twenty years or more can-
not be considered the equivalent of cash assets in determining
whether the constitutional debt limit of a city has been exceeded.

SAME — IMPROVEMENT DISTRICTS—SOLVENCY—PRESUMPTIONS. An
improvement district which includes practically all the real property
of a city will not be presumed insolvent, and hence in a state of
bankruptcy, in the absence of evidence of such fact.

SAME—INDEBTEDNESS—LOANS TO OTHER FUNDS. Temporary loans
by a city from the current expense fund to certain local improvement
districts and to the water works fund, which were solvent, do not
create a debt against the municipality, but may be considered as cash
assets and offset against the total indebtedness in determining
whether the city has exceeded its constitutional debt limit.

SAME—CLAIMS — ALLOWANCE OF — CITY WARRANTS — FAILURE TO
SPECIFY PURPOSE. Rem. & Bal. Code, § 7687, providing that, upon
allowance of any demand against the city, "the mayor shall draw a
warrant upon the treasurer for the same, which warrant . . .
shall specify for what purpose the same is drawn, and out of what
fund it shall be paid," is mandatory in its requirements, and a war-
rant which fails to state on its face the purpose for which it is
drawn creates no liability against the city, hence cannot be con-
sidered as a valid obligation in determining whether the city has
exceeded its constitutional limit of indebtedness.

Appeal from a judgment of the superior court for Kittitas
county, Kauffman, J., entered August 7, 1913, upon findings
in favor of the defendants, in a taxpayer's suit for equitable
relief. Reversed.

*T. L. Stiles* and *A. L. Slemmons*, for appellant.

*E. E. Wager, Hovey & Hale*, and *Bates, Peer & Peterson*,
for respondents.

[1]Reported in 142 Pac. 875.

MAIN, J.—This was a suit by a taxpayer for the purpose of determining whether Ellensburg, a city of the third class, had exceeded its constitutional debt limit of one and one-half per cent, without a vote of the people. The plaintiff claims that the city had exceeded this debt limit on August 10, 1912, October 7, 1912, and July 15, 1913. Whether, on any of these dates, the debt limit had been exceeded depends first, upon what assets of the city were equivalent to cash and, therefore, subject to be offset against the total indebtedness; and second, whether certain warrants evidence an obligation of the city.

The tax rolls of the city show delinquent unpaid taxes on real estate for the years 1889, 1890, 1891, 1892, and 1893, which, together with the accumulated interest, amounted to approximately $12,500. The city, from time to time, drew warrants on its current expense fund for the benefit of certain local improvement districts. These warrants were charged to the respective improvement district funds for the benefit of which they had been drawn. Likewise, current expense fund warrants were drawn for the benefit of the municipal water system and charged to the water works fund. There were outstanding against the city what were known as electric light warrants aggregating a large sum of money. These warrants were in form as follows:

Warrant........                              No........
    Treasurer of the City of Ellensburg, Washington.
    Pay to ................... or order ($....)..........Dollars,
from any Electric Light Funds not otherwise appropriated.
              ........................Mayor.
........................City Clerk.

A detailed statement of the city's financial condition at each of the times when it is claimed the debt limit was exceeded will not be here attempted. The facts, though largely stipulated, are exceedingly complicated. There is no serious dispute as to the material and controlling facts.

Law questions only will be decided upon this appeal. These questions are: First, can the delinquent taxes for the years named be considered as the equivalent of cash when computing the amount of the city's indebtedness; second, did the loans to the local improvement districts and water works fund constitute a municipal indebtedness; and third, are the electric light warrants a city liability?

I.   By § 6, art. 8 of the constitution, no city is permitted to incur indebtedness in any manner in an amount exceeding one and one-half per cent of the taxable property within such city, without being authorized so to do by the assent of three-fifths of the voters. In determining whether the indebtedness exceeds the limit fixed by the constitution, this court has held that, not only current taxes, but also delinquent taxes, and the interest thereon, may be treated as cash assets. In other words, that there shall be deducted from the total indebtedness the amount of current and delinquent taxes, together with interest. *State ex rel. Barton v. Hopkins,* 14 Wash. 59, 44 Pac. 134, 550; *Graham v. Spokane,* 19 Wash. 447, 53 Pac. 714; *State ex rel. American Freehold Land Mtg. Co. v. Mutty,* 39 Wash. 624, 82 Pac. 118, 109 Am. St. 917. The reason given for this rule is that, in legal contemplation, the collection of the taxes and interest is certain and, therefore, they are the equivalent of cash.

In *Graves v. Stone,* 76 Wash. 88, 135 Pac. 810, it was held that, after personal property taxes had been delinquent for a period of six years, there arose a presumption of payment, this presumption being one of fact and not of law. In this respect, there can be no distinction between delinquent real and personal property taxes. If the lapse of time in one case creates a presumption of payment, it must likewise do so in the other. It would seem that delinquent taxes and interest against which there is a presumption of payment could not reasonably be considered as equivalent to cash when determining whether the constitutional debt limit of a city has been exceeded. In the present case, the taxes which

are claimed to be equivalent to cash had been delinquent for twenty years or more. And their collection, under the doctrine of the *Graves* case, cannot, in legal contemplation, be considered certain. It follows that these taxes cannot be considered as the equivalent of a cash asset in determining the total amount of the city's indebtedness.

II. From the stipulated facts, it appears that advancements had been made from the current expense fund to certain local improvement districts and to the water works fund. It is an admitted fact that, in all these improvement districts, the assessments had been made and were in the process of collection and that the districts were solvent, with the exception of the improvement district which provided for the water distributing system for the city. This latter district includes all the real property of the city, with the exception of a tract of land about the Northern Pacific Railway station. If this district, covering practically all the real property in the city, is not also solvent, then the municipality would be in a state of bankruptcy. Of this there is no evidence, and it will not be presumed. The water works and distributing system were owned and controlled by the city. In *Griffin v. Tacoma*, 49 Wash. 524, 95 Pac. 1107, it was held, that where the city makes temporary loans from its general fund moneys to other funds which have an assured and certain source of income, the collection of which is under the control of the city, such loans do not imperil the general fund and are not to be considered in determining the obligations of the city, for the reason that the fund out of which the temporary loan is to be paid is the equivalent of cash as a working asset. In that case it was said:

"It is next suggested that the proposed pledging of the water receipts and the transfer from the general to the special fund, will obligate the city for new indebtedness which it cannot incur by reason of the constitutional limitation upon that subject. This court has already held that the mere pledge of the water receipts as a special fund does not

create a debt against the municipality within the meaning of the constitutional inhibition. *Winston v. Spokane*, 12 Wash. 524, 41 Pac. 888; *Faulkner v. Seattle*, 19 Wash. 320, 53 Pac. 365; *Dean v. Walla Walla*, 48 Wash. 75, 92 Pac. 895. We have also seen from what has already been said that the transfer from one fund to the other creates no indebtedness against the city. It is a mere temporary loan to a fund with an assured income, whose sources of supply are entirely under the control of the city. The city's general funds are not thereby in fact reduced, inasmuch as the credit of the general fund for the temporary transfer is the equivalent of cash as a working asset, and no new debt of the city arises."

Under the rule of that case, the legal certainty that the temporary loans to the improvement districts and the water works fund will be repaid makes them the equivalent of cash. As such, these amounts may be offset against the total indebtedness in determining whether the city has exceeded its debt limit.

III. From the facts above stated, it appears that the electric light warrants which had been issued, and the validity of which was questioned, did not show, on their face, the purpose for which they were issued. Rem. & Bal. Code, § 7687 (P. C. 77 § 331), provides:

"All demands against such city shall be presented to and audited by the city council, in accordance with such regulations as they may by ordinance prescribe; and upon the allowance of any such demand, the mayor shall draw a warrant upon the treasurer for the same, which warrant shall be countersigned by the clerk, and shall specify for what purpose the same is drawn, and out of what fund it is to be paid."

This section of the statute applies to municipal corporations of the third class, which the city in question is, and requires that, on the allowance of any demand against the city, the mayor shall draw a warrant upon the treasurer for the sum, which warrant shall be countersigned by the clerk and "shall specify for what purpose the same is drawn, and out of what fund it is to be paid." The warrants in question

specified the fund, but did not specify the purpose. Failing to conform to this statutory provision, are the warrants void as a municipal liability? Giving effect to the language of the statute, it would seem that this is a mandatory requirement. If warrants which do not specify the purpose are nevertheless valid, then any other requirement of the statute as to what the warrant shall contain might be omitted, and the statute practically nullified. Manifestly, the legislature intended to require that all warrants should substantially conform to this statutory requirement. The general rule, as established by the adjudicated cases, is that, where the charter or statute requires a municipal warrant to specify the purpose for which it was issued, a warrant which fails to state on its face the purpose creates no liability against the city, and is not evidence of a debt against it. *Travelers' Ins. Co. v. Denver*, 11 Colo. 434, 18 Pac. 556; *Raymond v. People*, 2 Colo. App. 329, 30 Pac. 504; *Reeve v. Oshkosh*, 33 Wis. 477. In the case last cited it was said:

"Another objection taken to the orders is, that they fail to state, as required by the city charter, the purpose for which they were drawn, and therefore create no liability against the city. This objection appears to us insurmountable. Section 1, ch. 7 of the charter (P. & L. Laws of 1868, ch. 501), provides that 'all orders drawn upon the treasury shall specify the purpose for which they were drawn, and shall be payable generally out of any funds in the treasury belonging to the city, except the school fund.' It must be admitted that the orders in the present case do not state any purpose for which the money was to be paid; nor do they conform in any manner to this provision. The language of the charter, it will be seen, is mandatory, that '*all orders shall specify the purpose for which they were drawn,*' while the orders before us contain no specification of the kind. We cannot therefore see how these orders can be said to create a liability against the city, or be evidence of a debt against it. For it can not be successfully claimed that the legislature could not direct the form and substance of the orders which should be issued by the officers of the city, and prescribe the mode in which such instruments should be drawn to render them binding

obligations. And having plainly required that the orders should state the purpose for which they were drawn, no orders are valid unless they conform to this requirement. The counsel for the plaintiffs, however, contends that this provision of the charter is merely *directory*, which the officers of the city might observe or not in issuing orders. We are unable to take this view of the provision. As already remarked, the language is imperative and mandatory, and plainly directs that every order issued by the officers of the city shall specify the purpose for which it is drawn. The object of the requirement is to protect the public against an abuse of the power to issue orders, and to guard against the fraud and dishonesty of city officials. If the orders specify the purpose for which they are drawn, citizens interested in the expenditure of public funds can ascertain from them what application was made of all moneys which might come into the city treasury, and see whether they were devoted to a legitimate object. And the city treasurer, on the presentation of the order, has the means of knowing whether money is paid on it for an unauthorized purpose. The provision is a wise and salutary one, easy to be complied with on the part of the city authorities, and cannot be disregarded when issuing orders which create a liability against the city. For, the manifest intention of the legislature was to forbid the issuing of any order which did not state the purpose for which it was drawn."

So far as we are informed, there are no authorities sustaining the contrary doctrine. The case of *Sutton v. Snohomish*, 11 Wash. 24, 39 Pac. 273, 48 Am. St. 847, does not cover the question here presented. If that case has any relevancy, it lends support to the view that the statutory requirement under consideration is mandatory.

The electric light warrants, failing to state the purpose, do not evidence a city liability. Whether independent of the void warrants the warrant-holders have an enforcible claim against the city is a question not now before us, and upon which no opinion is expressed.

The cause will be remanded with direction to the superior court to proceed in accordance with the views above set forth, and take further testimony for the purpose of determining

what warrants, if any, are void as having been issued at any of the times when it is claimed the city had exceeded its constitutional debt limit.

CROW, C. J., ELLIS, and GOSE, JJ., concur.

CHADWICK, J. (concurring)—The court having declined to overrule the case of *Griffin v. Tacoma*, 49 Wash. 524, 95 Pac. 1107, by following it in the case of *Scott v. Tacoma*, *ante* p. 178, 142 Pac. 467, I concur in the result.