[S. F. No. 15830. In Bank.—April 2, 1937.]

COUNTY OF LOS ANGELES, Petitioner, v. H. A. PAYNE, as County Auditor, etc., et al., Respondents.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Petitioner.

Franz R. Sachse and Russell K. Lambeau for Respondents.

CURTIS, J.—The petition in this matter shows that the board of supervisors of the county of Los Angeles in its budget for the fiscal year 1936–37 made an appropriation of approximately $3,500,000 for the aid and relief of indigents within said county. Before the 12th day of March, 1937, the county had expended for the purpose for which it was appropriated all of said sum with the exception of approximately $250,000, and this unexpended balance, on the date last mentioned, had been encumbered by outstanding unpaid contracts and obligations to its full extent, leaving the said county wholly destitute of funds with which to carry on its work for the relief of the indigents within the county. On that date, by a vote of four of its five members, the fifth member being absent from the meeting, the board of supervisors passed and adopted the following resolution:

"That this Board of Supervisors, in the final budget of the County of Los Angeles for the fiscal year 1936–37, appropriated for the direct relief of indigent persons eligible to aid and relief by the County of Los Angeles under that certain act of the legislature entitled 'An Act to Provide for the Aid and Relief of Indigents,' approved June 5, 1933, the sum of $3,430,000.00 to which sum an additional appropriation of $25,000.00 was added by transfer, making a total appropriation of $3,455,000.00 for said fund for the fiscal year 1936–37;

"That the total claims allowed and paid from said appropriation aggregate the sum of $3,203,849.08, leaving an unexpended balance of said appropriation of $251,152.92, all of which unappropriated balance is now encumbered by outstanding unpaid contracts, obligations and orders to the full extent of such balance, leaving no unencumbered and unappropriated balance in said appropriation;

"That the whole of the unappropriated reserve of the General Fund of the County of Los Angeles for the fiscal year 1936–37 has been fully appropriated and expended;

"That the full amount of all other appropriations contained in said budget will be required and necessary to be expended

in conducting the functions of county government for the balance of the fiscal year 1936–37, leaving no funds available for transfer to cover deficiencies in the appropriations for indigent relief for the remainder of the fiscal year 1936–37;

"That approximately 53,600 families, or in excess of 75,000 persons in the County of Los Angeles are now and have for many months past been destitute and indigent, requiring the furnishing of aid with which to acquire food, shelter and supplies from public funds of the county to preserve their health and prevent their starvation;

"That the cost and expense of furnishing aid and relief to such indigent persons eligible to aid and relief under said act will approximate $1,000,000.00 for the balance of the fiscal year, over and above the appropriations heretofore made therefor;

"Now, therefore, the Board of Supervisors of the County of Los Angeles hereby finds and determines that a grave public emergency exists which, unless provided for, may seriously endanger the public health and the preservation of order within the County of Los Angeles; that it is a necessary and mandatory governmental function imposed by the law of this state to provide for the relief of such persons; and that such emergency requires the incurring of obligations and the expenditures of funds in excess of the budgeted appropriations therefor; and be it further resolved, that the sum of $1,000,000.00 in addition to the sums provided for in the budget for the fiscal year 1936–37, be and the same is hereby appropriated for the items included under maintenance and operation for the Department of Charities of the County of Los Angeles, which sum is to be used solely and exclusively for the purpose of furnishing direct relief to the poor, destitute, indigent and infirm persons of the County of Los Angeles for the purchase of food and the providing of shelter and supplies for such persons, and the Auditor of the County of Los Angeles shall draw warrants not exceeding said amount of $1,000,000.00 on the General Fund of the county, chargeable to the maintenance and operation of the Charities Department of the County of Los Angeles for the relief of indigent persons, payable to such persons as shall hereafter be designated in voucher or vouchers approved by the Board of Supervisors; and the Treasurer of the County

of Los Angeles is hereby authorized and directed to pay such warrants out of any moneys in the treasury in such fund, and if there shall be insufficient moneys on hand in the treasury then such warrants shall be registered, bear interest and be called in the manner provided by law for the calling of other county warrants.''

After the adoption of said resolution, the superintendent of charities drew his requisition upon the county auditor of said county for twenty-nine separate warrants upon the treasurer of said county in the sum of one dollar each, payable respectively to twenty-nine poor and indigent persons, eligible by law and entitled to aid and relief from said county, in payment of demands upon the emergency appropriation for the direct relief of said twenty-nine persons. Said claims and demands of said poor and indigent persons were presented to the board of supervisors of said county on said 12th day of March, 1937, and were by said board of supervisors approved and ordered paid, and the auditor of said county was by said board of supervisors instructed and directed to approve and issue warrants for the same, and the treasurer of said county was by said board of supervisors ordered and directed to pay the same out of any funds available in the treasury of said county for payment of the same, and in the absence of such funds to register said warrants in the manner provided by law. The auditor of said county refused to approve said claims or demands, and refused to issue warrants, or any warrants, for any of said claims or demands, and the treasurer of said county declined and refused to either pay or register said warrants, or any of them. It is further alleged in said petition: ''That approximately 53,000 families, or in excess of 75,000 persons in Los Angeles County are now and have for many months past been destitute and indigent, requiring the furnishing of aid from public funds of the county with which to acquire food, shelter and supplies to preserve their health and prevent their starvation; and that the cost and expense of furnishing aid and relief to such indigent persons eligible to aid and relief will approximate $1,000,000.00 for the balance of the fiscal year, over and above the appropriations heretofore made therefor.''

Paragraph IX of said petition is as follows: ''That in fixing and determining the tax levy of Los Angeles County

for the fiscal year 1936–37, the Board of Supervisors of said county anticipated a current tax delinquency for said fiscal year in an amount equal to 7% of the revenue represented by taxes upon real and secured personal property; that in and by said tax levy said Board of Supervisors levied and imposed a tax rate upon real and secured personal property, which tax rate would mathematically produce, when applied to the total assessed valuation of such real and secured personal property, the sum of $1,638,550.05 in excess of the sum anticipated to be realized and actually raised during the fiscal year 1936–37; that said sum so included in said tax levy was not in said budget considered as revenue which would be realized or actually produced during said fiscal year, and that no part of said sum was included as an item of revenue against which any item of appropriation in said budget was charged or offset.''

The prayer of the petition asks that a peremptory writ of mandate be issued directed to respondents commanding them to comply with the order of the board of supervisors approving and ordering paid said claims and demands.

To this petition, the respondents, the auditor and the treasurer of the County of Los Angeles have filed a general demurrer. Upon the written stipulation of the parties, the matter has been submitted for decision upon the briefs on file.

The respondents herein, the auditor and the treasurer of said county, based their refusal to recognize said claims and demands and to comply with the directions contained in said resolution upon the following grounds which were set forth in writing and presented to said board of supervisors: (1) That the issue, approval, payment and registration of said warrants would violate the provisions of section 3714 of the Political Code, in that (a) inadequacy of appropriated funds with which to furnish relief to indigent persons, otherwise entitled to relief, does not and cannot constitute an ''emergency'' under the terms of said section and (b) that the cost and expense of furnishing such relief to indigent persons, in excess of appropriations therefor, is not a ''mandatory expenditure required by law'', as that expression is used therein; and (2) that the issue, approval and payment or registration of said warrants would constitute a violation of section 18 of article XI of the Constitution

in that such expenditure would exceed the income and revenue provided for the fiscal year 1936–37.

The respondents now rely upon these same grounds as a defense to this proceeding. We will consider these two grounds in the order just stated.

It will be noted that respondents contend in the first place that the issuance, approval, payment and registration of said warrants would violate section 3714 of the Political Code, and in the second place that the payment of said warrants would constitute a violation of section 18, article XI, of the Constitution, in that such expenditures would exceed the income and revenue provided for the fiscal year 1936–37.

Section 3714 of the Political Code makes it the duty of the board of supervisors, before making the annual tax levy, to prepare and adopt a budget which shall contain among other things an estimate of the revenues and expenditures for the fiscal year classified as in said section provided. In the fifth subdivision of said section, it is provided that, "The estimates of expenditures, classified as required in subdivision two hereof, and as finally fixed and adopted by said county board of supervisors, shall constitute the appropriations for the county for the fiscal year to which the budget is intended to apply, and the county board of supervisors and every other county officer . . . shall be limited in the making of expenditures or the incurring of liabilities to the amount of such appropriations and classifications respectively;"

It is further provided in said section that: "Upon the happening of any emergency caused by fire, flood, explosion, storm, earthquake, epidemic, riot, or insurrection, or for the immediate preservation of order or of public health, or for the restoration to a condition of usefulness of any public property, the usefulness of which has been destroyed by accident, or for the relief of a stricken community, overtaken by calamity, or the settlement of approved claims for personal injuries, or for property damages, exclusive of claims arising from the operation of any public utilities owned by the county, or to meet *mandatory expenditures* required by law, the county board of supervisors may upon the adoption, by a four-fifths vote of the members present at any meeting, of the time and place of which all the members of such board shall have had reasonable notice, of a resolution stating the facts constituting the emergency and

entering the same upon the minutes, make the expenditures necessary to meet such emergency.

"All emergency expenditures shall be paid by warrant from any moneys on hand in the county treasury, in any fund properly chargeable with such expenditure, and the county treasurer is hereby authorized and directed to pay such warrants out of any moneys in the treasury in such fund. If, at any time, there shall be insufficient moneys on hand in the treasury to pay any of such warrants, then such warrants shall be registered, bear interest, and be called in the manner provided by law for other county warrants."

By the provisions of said section, expenditures not included within the budget, but which result from the happening of an emergency, or which are necessary to meet mandatory expenditures required by law, are excepted from the operation of the limitation contained in subdivision 5 of said section quoted above. Respondents contend that the expenditure of the $1,000,000 proposed to be made by the board of supervisors of said county, is neither an emergency matter, nor is it necessary to meet a mandatory duty required by law.

The demurrer to the petition admits all the allegations thereof to be true. The statement in the petition that there now are and have been for many months in excess of 75,000 persons in said county, destitute and indigent, requiring the furnishing of aid with which to acquire food, shelter, and supplies from public funds of the county to preserve their health and prevent their starvation, must be accepted as an admitted fact in the determination of the questions involved in this proceeding. No showing is made in the petition that this same number of destitute and indigent persons were not residents of the county at the time of the adoption of the budget, or that there has been any change in the relief situation in said county from that existing at the time the board of supervisors adopted the budget for the present fiscal year. Upon this state of facts, the respondents claim that the showing made in the petition is insufficient to establish the existence of an emergency in said county respecting the relief situation. Reliance is placed by respondents in support of this contention upon the cases of *San Christina Investment Co.* v. *San Francisco*, 167 Cal. 762 [141 Pac. 384, 52 L. R. A. (N. S.) 676], and *Burr* v. *San Francisco*, 186 Cal. 508 [199

Pac. 1034, 17 A. L. R. 581]. These cases involved ordinances of the board of supervisors of the city and county of San Francisco, fixing the tax rate for two separate years following the 1906 fire. The ordinance involved in the first of these two cases was passed in the year 1910, and the rate fixed therein exceeded the maximum rate permitted by the charter of said municipality, which was one dollar upon each one hundred dollars valuation of property assessed. It was attempted to justify the excess assessment by a declaration that "a great necessity and emergency" existed in said city and county by reason of the destruction of a number of public buildings and their equipment and the necessity of replacing the same for municipal use. The charter expressly provided that the limitations placed upon the board of supervisors in fixing the tax rate at one dollar upon each one hundred dollars of the assessed valuation of the taxable properties within said city and county "shall not apply in case of any great necessity or emergency". This court, in the decision in that case, accepted the definition of emergency given by Webster as, "An unforeseen occurrence or combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency." It also construed the word, "great", preceding the words, "necessity or emergency", as used in the charter to mean, "a necessity or emergency of grave character and serious moment". It will be noted that the language used in section 3714 of the Political Code is materially different from that used in the charter of the city and county of San Francisco. The code section simply provides that upon the happening of any emergency by fire, flood, etc., the board of supervisors may make an expenditure to meet such emergency. In the San Christina Investment Company case, the court held that no great necessity or emergency, as those words were construed to mean, existed in said municipality by reason of the destruction some four years previously of certain buildings and equipment owned and used by said city and county in its government of said municipality. The court considered the hardship and inconvenience which the city and county would suffer by being deprived of the use of the buildings and other property destroyed by the fire, but held that an inconvenience to the city did not justify the setting at naught the written terms of the city's charter. It finally indicated that the course which the municipality

should pursue in raising these large revenues was either by a bond issue, or an amendment to its charter permitting a tax levy exceeding that fixed by its present charter. The case of *Burr* v. *San Francisco, supra,* was almost the exact counterpart of the case of *San Christina Investment Co.* v. *San Francisco, supra,* except that it involved a tax levy made some eight years after the fire of 1906. The levy exceeded the limit fixed by the charter. The excessive expenditures were claimed to be due to conditions resulting from the fire of 1906, and certain changes in the law which in certain instances increased the expenditures of the city and in other instances reduced the revenue of the municipality. This court simply followed its previous decision in the San Christina Investment Company case, and applied the construction which it there gave to the provisions of the charter, and held that no great necessity or emergency existed in said municipality which would justify expenditures in excess of the limit fixed by the charter.

We think the situation which confronts the County of Los Angeles growing out of the relief problem is materially different from that considered in the two cases just mentioned. Among the definitions of emergency given and approved by the two decisions discussed above are, "pressing necessity", "exigency". "Exigency" in turn is defined by Webster as "a case demanding immediate action or remedy". While the destruction of necessary buildings and their equipment might result in a condition producing hardship and inconvenience to a municipality in its work of carrying on the business of a city, it can hardly be said that the want of such facilities would necessarily be held to be "a pressing necessity" or "a case demanding immediate action or remedy". A municipality could exist and perform the ordinary governmental functions without public buildings or equipment of its own. However, the situation in the County of Los Angeles which the increased expenditures are designed to remedy is of a most pressing character, and one from which immediate relief is required if human life is to be sustained and the health of a large number of persons is to be preserved. To relieve such a condition we think comes within the enumerated purposes in the statute for which expenditures may be made beyond the limitations of the budget. To preserve the public health which necessarily includes the saving of

people from starvation, is one of the expressed purposes for which expenditures may be made under the emergency provisions of said section. Such a condition as we have described herein, and which it is admitted exists in the county of Los Angeles as shown by the petition herein, was expressly held to be a "grave public emergency" by the Supreme Court of Washington in the case of *Rummens* v. *Evans*, 168 Wash. 527 [13 Pac. (2d) 26, 29]. In its decision in that case, the court made the following pointed statement: "If husbands and fathers of 17,000 families are unable to find food to satisfy the hunger of their families and other bare necessities, although in the midst of plenty, many will be driven to get what they can where they may find it by any means available or driven to desperate self-destruction. They will not quietly and tamely submit to starvation. The burdens of the taxpayers of the state are grievous, as we well know, and have reached a point which is well-nigh unendurable, but not so grievous as to be hungry, cold, naked, without fault, and seeing helpless women and children in the same state and unable to relieve them." The effect of the decision in that case was to sustain the validity of warrants issued under a resolution of the county commissioners of the county of King declaring an emergency existed in said county by reason of the condition described in the foregoing quotation from said decision. In our opinion, the conclusion reached by the court in that case is sound, and should be followed in determining the question now before us. We accordingly hold that the facts alleged in the petition herein are sufficient to show, and do show, that an emergency exists in said county respecting the relief situation therein, which justified the passage of the resolution appropriating the sum of $1,000,000 for the relief of the poor and indigent of said county over and above the amount provided for in the budget of the present fiscal year.

We are further of the opinion that the expenditures provided in said resolution are mandatory expenditures required by law and are, therefore, not within the inhibitions of section 3714 of the Political Code. ■ It is made the duty of every county in this state, "to aid and relieve" all indigent residents of the county. (Stats. 1933, p. 2005; Deering's Gen. Laws, 1933, Act 5815.) The obligation imposed by this statute is a mandatory duty. (*San Francisco* v. *Collins*,

216 Cal. 187, 190 [13 Pac. (2d) 912], and *McBurney* v. *Industrial Acc. Com.*, 220 Cal. 124, 127 [30 Pac. (2d) 414].)

There is nothing in conflict with this statement of the law in any of the following three cases relied upon by the respondents: *Pacific Undertakers* v. *Widber*, 113 Cal. 201 [45 Pac. 273], *Goldsmith* v. *San Francisco*, 115 Cal. 36 [46 Pac. 816], and *Arthur* v. *City of Petaluma*, 175 Cal. 216, 220 [165 Pac. 698]. It was held in these three cases that the claims of the plaintiffs, although founded upon certain statutory provisions, were not valid claims for the reason that the payments thereof would be in violation of section 18, article XI of the Constitution, which forbids the incurring of any indebtedness by a municipality exceeding the income and revenue provided for such year, except by a vote of the electors of such municipality. We are not now considering the effect of such constitutional inhibition upon the indebtedness which is sought to be incurred by the adoption of the resolution of said board of supervisors. That question will be given attention later on in this opinion. ■
The question which we are now considering is whether the incurring of said indebtedness is prohibited by section 3714 of the Political Code. The codes of this state are simply a part of the statutory law of this state. They have no higher standing or sanctity than any other statute regularly passed by the legislature. Section 3714 of the Political Code and the Act to Provide for the Aid and Relief of Indigents, *supra*, must be read together. Neither has any supremacy over the other, except in the case of conflict, the later enactment would take precedence over the other. This, of course, is not the rule when a conflict exists between a provision of the Constitution and a statute, and the decisions in the three cases just referred to are based upon the well established doctrine that the Constitution of the state is supreme, and any statute in conflict therewith is of no validity. The act of 1933, making it the mandatory duty of counties to aid and relieve its indigent persons residing therein, is not limited by any provisions of section 3714 of the Political Code for this section expressly provides that the limitation as to expenditures shall not apply to mandatory expenditures required by law. It may be questioned whether a county may be relieved of the mandatory duty imposed upon it by this statute by making an insufficient appropriation to meet

the expenses necessary to properly care for its poor and indigent residents. It is not necessary for us to decide this question in this case for the reason that the County of Los Angeles has shown no disposition to shirk this duty but by the passage of the resolution herein involved is attempting in good faith to perform the obligation imposed upon it by the statute. In so doing, it has confined itself strictly within the requirements and limitations imposed by said section 3714 of the Political Code. We are, therefore, of the opinion that the incurring of said additional indebtedness is a mandatory duty imposed by the statute, as well as that the purpose thereof is to meet an emergency within the meaning of that term as used in section 3714 of the Political Code.

The only remaining question for decision is whether the incurring of said additional indebtedness exceeds the income and revenue of said county for the present fiscal year, and is, therefore, within the restrictive provisions of section 18, article XI of the Constitution.

From the admitted allegations of the petition, it appears that the board of supervisors of the County of Los Angeles, in fixing and determining the tax levy for the present fiscal year, anticipated a tax delinquency of 7 per cent of the revenue represented by taxes upon real and secured personal property. This anticipated tax delinquency amounts to the sum of $1,638,550.05. This sum was not included in the tax levy or in the budget as revenue to be realized or produced during the present fiscal year, and no part of said sum was included as an item of revenue against which any item of expense in said budget was charged or offset.

It is established in this state that the validity of a liability, subject to the provisions of this section of the Constitution last mentioned depends upon whether or not there were unappropriated revenues when the liability was incurred. (*Buck* v. *City of Eureka*, 124 Cal. 61, 68 [56 Pac. 612].) If revenues have been provided equivalent in amount to the liability contracted, there is no violation of said section of the Constitution. (*State* v. *McCauley*, 15 Cal. 429, 430, 447; *Koppikus* v. *State Capitol Commissioners*, 16 Cal. 248; *People* v. *Pacheco*, 27 Cal. 175, 176, 207, 208.)

The question as to whether unencumbered uncollected taxes of the present or of prior years constitute income and revenue for the purpose of computing the constitutional limi-

tation has not apparently ever been before the appellate courts of this state. In other jurisdictions, it has frequently been the subject of judicial discussion in which the courts have been in accord in holding that at least uncollected taxes for the current year to the entire amount thereof constitute income and revenue within the meaning of the constitutional prohibition.

In an early case the question was squarely before the Supreme Court of Washington. In that case the court discussed and decided the question in the following language: "The other question is one of more difficulty. Under constitutional provisions of substantially the same force as ours, the most of the states have adopted some rule under which the revenues to be collected for the current year could be made available prior to their collection. In California, where the Constitution prohibits counties from incurring any indebtedness at all and the state from incurring an indebtedness of more than $300,000, it has often been held that the counties could incur obligations and issue warrants therefor payable out of the revenues for the current year to be thereafter collected, and that the state could do likewise to an amount greatly in excess of the $300,000, if such excess did not exceed the amount to be derived from the revenues of the current year. See *State* v. *McCauley,* 15 Cal. 429, 430; *Koppikus* v. *State Capitol Commissioners,* 16 Cal. 248, 249; *People* v. *Pacheco,* 27 Cal. 175, 207. In Iowa certain municipalities were prohibited from incurring indebtedness in excess of 5% of their assessed valuation, and the supreme court of that state has frequently held that municipalities in debt to that amount could incur further indebtedness to the amount of the revenue to be derived from taxes assessed for the current year. See *Dively* v. *City of Cedar Falls,* 27 Iowa, 227; *Grant* v. *City of Davenport,* 36 Iowa, 396. In Louisiana the interpretation of a similar constitutional provision is the same. See *Laycock* v. *City of Baton Rouge,* 35 La. Ann. 475. Cases from other states to the same effect might be cited, and no case holding to the contrary has been called to our attention. We therefore feel compelled to agree with the contention that the amount of the taxes assessed for county purposes upon the tax roll for the current year must be deducted from the outstanding county indebtedness to determine its amount, within the

meaning of the constitutional prohibition." (*State ex rel. Barton* v. *Hopkins,* 14 Wash. 59 [44 Pac. 134].)

Further on in the opinion the court says: "Those [taxes] of the current year have been by the courts treated as a part of the cash assets of the county for the reason that, in legal contemplation, their collection is certain. . . . The legal certainty grows out of the fact that the law presumes that the taxes assessed upon the property, will be paid for the reason that the property is liable for the tax and can be sold if the tax is not paid. If this legal presumption is warranted as to taxes when they are assessed, there is no reason why such presumption should not continue until the property has been sold for the purpose of realizing the amount of taxes assessed against it."

That case has been followed by the Supreme Court of Washington. (*Mullen* v. *Sackett,* 14 Wash. 100 [44 Pac. 136]; *Graham* v. *Spokane,* 19 Wash. 447 [53 Pac. 714]; *State* v. *Mutty,* 39 Wash. 624 [82 Pac. 118]; *Seymour* v. *Ellensburg,* 81 Wash. 365 [142 Pac. 875].) These cases hold that even delinquent taxes of previous years may be treated as cash assets in computing the income and revenue of a subsequent year. To the same effect is the case of *Overall* v. *City of Madisonville,* 125 Ky. 684 [102 S. W. 278, 281, 12 L. R. A. (N. S.) 433]. However, the Supreme Court of Iowa limits the income and revenue of the year to the taxes assessed and to become due during that year. (*French* v. *City of Burlington,* 42 Iowa, 614, 620.) In that case, the court stated the law as follows: "Up to the time of the annual tax sale, these taxes should be regarded as available assets. But after that period we are of the opinion, and so hold, the burden is on the city to show that such taxes have any value before they should be counted or deemed available assets for the purpose of meeting a proposed indebtedness." It is not necessary for us to decide the question as it relates to delinquent taxes, for if the county may include the entire tax levy as income and revenue of the present year, the constitutional provision limiting the incurring of indebtedness to the revenue and income provided for such year has not been violated by the resolution increasing this appropriation for relief by the amount therein named.

Our attention has not been called to any contrary authorities. Those we have cited are in unison in holding, in

effect, that the entire amount of taxes assessed for county purposes upon the tax rolls for the current year is available assets for the purpose of determining the total revenue and income for the year. Computing the revenue and income of the County of Los Angeles for the present year upon this basis, the additional expenditures incurred by the resolution of the board of supervisors of March 12, 1937, did not result in an excess of expenditures over the revenue and income of said county provided for the year. There was, therefore, no violation of the terms of section 18, article XI, of the Constitution by reason of the incurring of this additional liability.

There are other questions raised and additional grounds advanced by petitioner in support of its petition herein, but they are not of substantial importance in view of our decision of the questions considered in this opinion.

Let the writ issue as prayed for.

Seawell, J., Shenk, J., Thompson, J., Edmonds, J., and Langdon, J., concurred.